RUSSELL, J.,
concurring in part and dissenting in part:
¶ 23. I agree with the majority’s holding regarding Miles’s malicious-prosecution claim. The majority also finds that the trial court properly granted Moak’s[3] motion for summary judgment because Miles failed to establish the three elements necessary for an abuse-of-process claim. In my view, (1) Moak made an illegal use of a legal process; (2) it had an ulterior motive; and (3) damage resulted from its improper use of process. Therefore, I respectfully dissent.
¶ 24. A trial court’s grant of summary judgment is reviewed de novo. Hubbard v. Wansley, 954 So.2d 951, 956 (¶ 9) (Miss. 2007). Summary judgment will be granted only when there is no genuine issue of material fact to be decided, and the moving party is therefore entitled to judgment as a matter of law. See Monsanto Co. v. Hall, 912 So.2d 134, 136 (¶ 5) (Miss.2005). “To withstand summary judgment, the party opposing the motion must present sufficient proof to establish each element of each claim.” Mortem v. City of Shelby, 984 So.2d 323, 330 (¶ 14) (Miss.Ct.App. 2007) (citing Galloway v. Travelers Ins. Co., 515 So.2d 678, 684 (Miss.1987).
¶ 25. According to our supreme court, the “crucial element” of an abuse-of-process claim “is the intent to abuse the privileges of the legal system.” Ayles ex rel. Allen v. Allen, 907 So.2d 300, 303 (¶ 10) (Miss.2005) (citing McLain v. West Side Bone & Joint Ctr., 656 So.2d 119, 123 (Miss.1995)). In this case, Moak asserts that it reported what it believed to be a crime, motivated only by the desire to see that justice was done. However, the record indicates otherwise. That is, Moak’s ulterior motive in exercising such an illegal, or improper, use of process was to receive payment for a civil debt.
¶ 26. It is undisputed that Miles acquired the vehicle through the normal *588 course of business with Moak. The terms of the sale of the Yukon were in accordance with the custom and practice in the wholesale used car business in Mississippi: (1) the seller delivers possession of the motor vehicle and keys to the vehicle, along with a bill of sale; (2) no payment is expected at the time of sale since the title documents for the vehicle usually are not in the hands of the seller; (3) payment for the motor vehicle is expected at the time the title is tendered to the buyer; and (4) in the meantime, the buyer has the authority to sell the vehicle to third persons and deliver to them the necessary application for title, allowing the third party to obtain license plates and file the application.
¶ 27. Within ninety days of the transaction, on December 15, 2008, Moak submitted a claim to Western Surety Co. to collect on Mile’s surety bond. In the claim, Moak did not allege that Miles had stolen the vehicle. Rather, Moak admitted that the purpose of the claim was to collect payment. On February 17, 2009, CNA Surety responded, stating that if the Moak was still holding title of the vehicle, then Moak could recover payment. Again on April 24, 2009, CNA Surety sent a letter stating that until CNA Surety received a claim for the title of the vehicle, CNA Surety would not be able to assist Moak. However, it does not appear that Moak ever tendered the title to CNA Surety or Western Surety Co. to process for payment. Instead, Moak turned to the criminal process to collect the civil debt.
¶28. Also, Burns reported the vehicle to the Ridgeland Police Department as “stolen.” When questioned under oath, Burns admitted that although he had filed criminal charges, he did not intend for Miles to be arrested. Burns further admitted that he did not intend for Miles to go to jail. Additionally, while the vehicle was reported as stolen, Moak did not file an insurance claim with its carrier, and the record indicates that Moak had no expectation of the return of the vehicle. The record is silent as to why Moak would not want Miles arrested or sent to jail if Moak believed that a crime had occurred. Additionally, by reporting the vehicle as stolen, it would be reasonable to expect the car to be returned. Instead, Moak’s actions reflect use of the criminal process to coerce Miles into providing payment.
¶ 29. Finally, while it was Miles’s attorney who initiated the compromise to dismiss the criminal charges upon payment for the vehicle, the record indicates that if Miles’s attorney had not contacted Moak, Moak would have allowed the court to go forward with the criminal proceedings. These actions further indicate that Moak’s primary motive was to obtain payment for the vehicle, not to see that justice was done.
¶ 30. It is clear from the record that Moak’s ulterior motive was to receive payment of a civil debt, thus satisfying the second element of an abuse-of-process claim. And it is well established “that the use of criminal process ... in an effort to collect a civil debt will support an action for abuse of process,” in turn satisfying the first element of an abuse-of-process claim. McComett v. City of Jackson, Miss., 489 F.Supp.2d 605, 610 (S.D.Miss. 2006). Because Miles suffered damages as a result of this improper use of process, he established the three elements to support a claim for abuse of process. I submit that the record evidence presents, at the very least, a genuine issue for the fact-finder precluding summary judgment.
¶ 31. Based on the discussion above, I would reverse summary judgment and remand for further proceedings on this issue.

. I refer to the Appellees collectively as "Moak," unless specified otherwise.